# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES C. YORK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 5234 |
| v. ) | |
| ) | Judge John W. Darrah |
| JAMES B. PEAKE, Secretary, ) | |
| Department of Veterans Affairs, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, James C. York ("York"), pursuant to 42 U.S.C. § 2000e-16, brings suit against Defendant, James B. Peake, Secretary of the United States Department of Veterans Affairs ("VA"), in his official capacity. York alleges gender discrimination and retaliation because he was not selected for a promotion. The Defendant has moved for summary judgment. For the following reasons, the Defendant's motion for summary judgment is granted.

## UNDISPUTED FACTS

York is an employee at Hines VA Hospital ("Hines"). (Def.'s 56.1(a)(3) at ¶ 5). York has been the Section Chief of the Environmental Management Service ("EMS") at Hines since 1998. (Def.'s 56.1(a)(3) at ¶ 6). The EMS is responsible for sanitation, interior design, laundry, and linen operations at Hines. (Def.'s 56.1(a)(3) at ¶ 17).

In 2005, York was considered for a promotion to Chief of EMS at Hines ("Chief Promotion"). (Def.'s 56.1(a)(3) at ¶ 65). Laurin A. Devine ("Devine") was also considered for the Chief Promotion. (Def.'s 56.1(a)(3) at ¶ 65). Judith Aldridge, ("Aldridge"), also known as Judith Maxwell-Perkins, was a member of the panel that evaluated both York and Devine.

(York's 56.1(a)(3) at ¶ 67). The panel recommended that Devine be awarded the Chief Promotion. (York's 56.1(a)(3) at ¶ 67). Ultimately, Devine was awarded the Chief Promotion and has served as EMS Chief at Hines since May 2005. (Def.'s 56.1(a)(3) at ¶¶ 20, 66). After Devine won the Chief Promotion, York filed a federal Equal Employment Opportunity ("EEO") action challenging the VA's decision to award the Chief Promotion to Devine instead of York. (Def.'s 56.1(a)(3) at ¶ 66). The United States District Court for the Northern District of Illinois and the United States Court of Appeals for the Seventh Circuit both found that there was no discrimination in the VA's decision to award the Chief Promotion to Devine instead of York. *York v. Nicholson*, No. 05 C 5690, 2007 U.S. Dist. LEXIS 10167, at *17 (N.D. Ill. Feb. 12, 2007), *aff'd sub nom. York v. Peake*, No. 07-1542, 2008 U.S. App. LEXIS 13911, at *10 (7th Cir. June 30, 2008). In September 2005, after Devine was awarded the Chief Promotion, Aldridge said that she was going to get a new position from Devine. (York's 56.1(a)(3) at ¶ 75).

In February 2006, and then again in April 2006, the VA posted a promotion announcement for the position of Assistant Housekeeping Officer in the EMS at Hines, the EMS Deputy Chief. ("Deputy Chief Promotion") (Def.'s 56.1(a)(3) at ¶¶ 16, 18, 28). York was one of four (4) EMS Section Chiefs at Hines. (Def.'s 56.1(a)(3) at ¶¶ 5, 8, 12, 14). York, two other EMS Section Chiefs at Hines, and others applied for the Deputy Chief Promotion. (Def.'s 56.1(a)(3) at ¶ 22). The other two Section Chiefs at Hines who applied for the Deputy Chief Promotion were Aldridge and Sandre Sparks ("Sparks"). (Def.'s 56.1(a)(3) at ¶¶ 8, 14, 22). As the EMS Chief at Hines, Devine was the selecting official for the Deputy Chief Promotion. (Def.'s 56.1(a)(3) at ¶¶ 19, 20).

2

In April 2006, York, Aldridge, and Sparks were all Housekeeping Aid Supervisors (Section Chiefs) in the EMS for the VA at Hines. (Def.'s 56.1(a)(3) at ¶¶ 5, 8, 14). York, Aldridge, and Sparks had all been EMS Section Chiefs since 1998. (Def.'s 56.1(a)(3) at ¶¶ 6, 9, 15). York, Sparks, and Aldridge had worked at Hines since 1974, 1982, and 1976, respectively. (Def.'s 56.1(a)(3) at ¶¶ 6, 9, 15). Like York's challenge for being denied the Chief Promotion, Aldridge had also engaged in her own protected EEO activity. (Def.'s 56.1(a)(3) at ¶ 11).

After Human Resources found that they met the minimum qualifications of the position, York, Aldridge, Sparks, and others were interviewed by a four-member panel comprised of VA personnel from outside the EMS at Hines. (Def.'s 56.1(a)(3) at ¶¶ 23, 24). After completing its interviews, the panel recommended Sparks for the position of Assistant Housekeeping Officer in the EMS at Hines. (Def.'s 56.1(a)(3) at ¶ 25). Sparks, however, was unable to fill the position because it would have required him to supervise his spouse, who was also an EMS employee, in violation of VA internal policy. (Def.'s 56.1(a)(3) at ¶ 27). Consequently, the VA re-posted the promotion for Assistant Housekeeping Officer in the EMS at Hines. (Def.'s 56.1(a)(3) at ¶ 28).

York, Aldridge, Sparks, and EMS Section Chief Martin Anderson ("Anderson") applied for the re-posted position. (Def.'s 56.1(a)(3) at ¶ 30). In April 2006, Anderson was a Housekeeping Aid Supervisor (Section Chief) in the EMS of the VA at Hines. (Def.'s 56.1(a)(3) at ¶ 12). Anderson had worked at Hines since 1977 and had been an EMS Section Chief since 1998. (Def.'s 56.1(a)(3) at ¶ 13).

Devine established a new panel, consisting of two males and two females, to interview the candidates for the re-posted position.[1] (Def.'s 56.1(a)(3) at ¶¶ 31, 32). Based on the panel's interview criteria, the panel awarded Aldridge a score of 121 and York a score of 56. (Def.'s 56.1(a)(3) at ¶ 36). All members of the panel awarded Aldridge a higher score than York. (Def.'s 56.1(a)(3) at ¶ 36). Thus, the panel recommended Aldridge for the position. (Def.'s 56.1(a)(3) at ¶ 37). After the panel recommended her, Devine selected Aldridge for the position.[2] (Def.'s 56.1(a)(3) at ¶ 38).

## LEGAL STANDARD

Summary judgment is appropriate when there are no issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (*Celotex*); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). The evidence must be viewed in the light most favorable

---

[1] The parties dispute the nature of these interviews. The Defendant claims that the interviews were "performance based." (Def.'s 56.1(a)(3) at ¶¶ 31, 33, 34). In contrast, York, in his 56.1(a)(3) Response, consistently denies that the interviews were "based on performance." (York's 56.1(a)(3) at ¶¶ 31, 32, 33, 34, 36). Notably, however, York took a different position during his deposition. (Ex. C to Def.'s 56.1(a)(3) at 27).
> Q. Do you remember specifically any of the questions you were asked by the second interview panel?
> A. Well, basically, yes. I believe they asked some questions that were in relationship to the technical aspect of the position, you know. They was [sic] doing a performance-based interview and they basically was [sic] asking questions about my ability to analyze computer data.
> (Ex. C to Def.'s 56.1(a)(3) at 27).

[2] Again, the parties dispute the rationale for Devine's selection. The Defendant claims that Devine's selection was "[b]ased in part on the panel's recommendation" and based in part on Devine's opinion that Aldridge "had superior interpersonal skills, and . . . had the team building skills necessary for the position." (Def.'s 56.1(a)(3) at ¶¶ 38, 40). In contrast, York alleges that Devine "had determined to select Aldridge before the interviews." (York's 56.1(a)(3) at ¶¶ 38, 39, 40, 41). Although York repeatedly responded that "*Plaintiff* had determined to select Aldridge before the interviews," the Court can only assume that York meant to refer to Devine. (York's 56.1(a))(3) at ¶¶ 38, 39, 40, 41). Thus, the Court will treat York's denials as indicating his belief that Devine "had determined to select Aldridge before the interviews."

4

to the party opposing summary judgment with all justifiable inferences being drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Kizer v. Children's Learning Center*, 962 F.2d 608, 611 (7th Cir. 1992).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex*, 477 U.S. at 323–24. "The burden is on the non-moving party to come forward with '"specific facts showing that there is a genuine issue for trial" by referring to the record evidence on file.'" *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, (7th Cir. 2000) (*Moore*) (quoting *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997)). A genuine issue of material fact only exists if a reasonable jury could find for the party opposing the motion for summary judgment based on the record as a whole. *Moore*, 221 F.3d at 950.

To survive a motion for summary judgment, a party is required to "wheel out all its artillery to defeat it." *Caisse Nationale De Credit Agricole v. CBI Indus. Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (quoting *Employers Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency, Inc.*, 846 F. Supp. 677, 685 (N.D. Ill. 1994)). This is why summary judgment has been called the "put up or shut up" moment in a lawsuit. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

The evidence that the party opposing summary judgment wheels out, however, must be more than general or conclusory allegations that issues of fact exist or might exist. Fed. R. Civ. P. 56(e); *see Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 378 (7th Cir. 1998). The United States Court of Appeals for the Seventh Circuit has repeatedly held that "[c]onclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment." *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997)

5

(*Haywood*); *see Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir. 1999) (*Shank*) ("[S]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment.") (quoting *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993)); *Fed. Deposit Ins. Corp. v. Lauterbach*, 626 F.2d 1327, 1338 (7th Cir. 1980) (*FDIC*) (holding that allegations that are unsupported by the record failed to create a genuine issue of material fact).

## ANALYSIS

York alleges both gender discrimination and retaliation as the reasons he was not selected to receive the promotion at issue. Gender discrimination and retaliation can both be proved by either a direct or an indirect method. *Durkin v. City of Chicago*, 341 F.3d 606, 613–14 (7th Cir. 2003).

### *Direct Method of Proving Gender Discrimination*

To prove gender discrimination under the direct method, a plaintiff must show, with either direct or circumstantial evidence, that his employer's decision to make an adverse employment decision with respect to the plaintiff was motivated by an improper purpose like gender. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (*Rhodes*). "Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." *Rhodes*, 359 F.3d at 504. Gender discrimination under the direct method may also be shown "by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 720 (7th Cir. 2008) (quoting *Rhodes*, 359 F.3d at 504).

6

York fails to present sufficient evidence to withstand summary judgment as to the direct method of proving gender discrimination. In large part, York only points to his own affidavit as support for his contentions that: (1) the interviews were not performance based; (2) the panel's scoring was not based on the answers that the candidates gave; (3) Devine[3] had determined to select Aldridge before the interviews; and (4) Devine[4] had a special affinity for Aldridge based on her gender. These contentions are unsupported by any other evidence in the record. Thus, York's self-serving affidavit cannot preclude summary judgment. *Shank*, 192 F.3d at 682; *Haywood*, 121 F.3d at 1071; *FDIC*, 626 F.2d at 1338.

The Court's conclusion is further bolstered by York's admission of his lack of evidence. Specifically, York admitted that "[he] has no direct evidence of gender discrimination." (York's 56.1(a)(3) at ¶ 63). This is a "damaging admission[] confirming that [York] lacks [supporting] information." *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1111 (7th Cir. 2004) (*Koszola*).

Furthermore, the VA's decision to promote Aldridge and not York is entirely reasonable. Aldridge outscored York in the panel interview by more than 2 to 1. The interview panel recommended Aldridge, not York. The interview panel itself was composed of two men and two women. The VA even originally selected Sparks, a male, for the position before it was determined that Sparks could not take the post. Indeed, after Aldridge left Hines, the VA filled her post with another male. Given these undisputed facts, York cannot make a *prima facie* showing of gender discrimination via the indirect method.

---

[3] Although York wrote "[p]laintiff had determined to select Aldridge before the interviews," this appears to be a typo. (York's 56.1(a)(3) at ¶¶ 38, 39, 40, 41). The Court will construe this denial as if it read, "Devine had determined to select Aldridge before the interviews."

[4] Again, York appears to have overlooked a typo when he wrote "[p]laintiff had a special affinity for Aldridge based on her gender." (York's 56.1(a)(3) at ¶ 41). The Court will construe this denial as if it read, "Devine had a special affinity for Aldridge based on her gender."

7

*Indirect Method of Proving Gender Discrimination*

To prove gender discrimination under the indirect method, generally a plaintiff must show that: "(1) he is a member of a protected class; (2) he applied for, and was qualified for, an open position; (3) the employer rejected him for the position; and (4) the employer filled the position with an individual outside of the plaintiff's protected class." *Gore v. Ind. Univ.*, 416 F.3d 590, 592 (7th Cir. 2005) (*Gore*). "Because it 'is the unusual employer who discriminates against majority employees,' a male plaintiff alleging gender discrimination must show something more than the fact that he is gendered." *Gore*, 416 F.3d at 592 (citations omitted). "The plaintiff in such cases 'must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites [or men] or evidence that there is something "fishy" about the facts at hand.'" *Gore*, 416 F.3d at 592 (internal quotation omitted).

York's claim fails at the very first prong, especially in light of the heightened requirements of a majority employee alleging gender discrimination. Again, York's denials are premised in large part on his own self-serving affidavit. As such, his showing is insufficient to overcome summary judgment. *Shank*, 192 F.3d at 682; *Haywood*, 121 F.3d at 1071; *FDIC*, 626 F.2d at 1338.

*Direct Method of Proving Retaliation*

To prove retaliation under the direct approach, "a plaintiff must present evidence of: (1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two." *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, (7th Cir. 2006). In this case, York did engage in statutorily protected activity. The VA did take an action adverse to York because it did not promote York. York, however, cannot show a causal connection between the two.

8

Aldridge, the person selected for the promotion, was also a Section Chief. Indeed, Aldridge had also engaged in protected Equal Employment Opportunity activity. Even the timing between York's protected activity and his non-selection for the promotion at issue, six (6) months, is insufficient to show a causal link because "mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (citations omitted).

York's allegations of a causal connection between his statutorily protected activity and the VA's adverse action are based, in large part, on his own self-serving affidavit. As such, his showing is insufficient to overcome summary judgment. *Shank*, 192 F.3d at 682; *Haywood*, 121 F.3d at 1071; *FDIC*, 626 F.2d at 1338. Indeed, York even admitted that he lacked direct evidence of retaliation.

*Indirect Method of Proving Retaliation*

To prove retaliation under the indirect approach, York must show that: "(1) [he] engaged in statutorily protected activity; (2) [he] met [his] employer's legitimate expectations; (3) [he] suffered an adverse action; and (4) [he] was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008) (*Metzger*) (citation omitted). York unquestionably meets the first three criteria. York's claim fails on the fourth prong for the simple reason that he was not treated less favorably than similarly situated employees who did not engage in statutorily protected activity.

Aldridge was selected for the promotion at issue. Aldridge, however, has also engaged in statutorily protected activity. Indeed, there is no indication that either Sparks or Anderson, the other two Section Chiefs considered for the promotion, engaged in statutorily protected activity. Thus, York was treated identically to at least two other "similarly situated employees who did not engage in statutorily protected activity." *Metzger*, 519 F.3d at 681. As such, York cannot preclude summary judgment based on the indirect method of proof of retaliation.

### York's Other Arguments

York argues that he suffered from "a hostile work environment of pervasive and repeated bad treatment." (York's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 8.) York fails to explain how the undisputed facts show that his was a hostile work environment. More importantly, York does not even indicate how evidence of a hostile work environment is relevant to his claims of gender discrimination or retaliation. Like all of York's other arguments, his claims of a hostile work environment are based almost exclusively on conclusory statements in his own self-serving affidavit. Thus, his showing is insufficient to overcome summary judgment. *Shank*, 192 F.3d at 682; *Haywood*, 121 F.3d at 1071; *FDIC*, 626 F.2d at 1338.

York also suggests that the VA's rationale for not awarding him the Deputy Chief Promotion is pretextual. "[N]either in ordinary language nor in the law does [pretext] mean a mistake. It means a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). York has presented no evidence that the VA's rationale for awarding the Deputy Chief Promotion to Aldridge was anything except merit based. Indeed, York admits that the interview panel awarded Aldridge a higher score than York and that the interview panel recommended Aldridge, not York, for the Deputy Chief Promotion. Especially

10

in light of these admitted facts, York's own statements are insufficient to defeat summary judgment. *Shank*, 192 F.3d at 682; *Haywood*, 121 F.3d at 1071; *FDIC*, 626 F.2d at 1338.

## CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment is granted.

Dated: November 5, 2008

JOHN W. DARRAH
United States District Court Judge